# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| MICHAEL A. CERNY, ET AL. | § |
| | § |
| v. | § |
| | §    SA-13-CV-562-XR |
| MARATHON OIL CORP., ET AL. | § |

## ORDER

On this day came on to be considered Plaintiff's motion to remand.

## Background

Plaintiffs are residents of Karnes City, Texas. On May 21, 2013, they filed an original petition in the 218th District Court of Karnes County, Texas. They allege in their petition that about ten years ago they moved from San Antonio to the rural countryside and now complain about the recent influx of oilfield activity in the area. They allege: "The constant traffic, dust, strong odors, and noise radically altered the lifestyle previously enjoyed by the plaintiffs and made the enjoyment of their outdoor activities impossible. In early 2012, the plaintiffs found their property completely surrounded by wells and facilities owned by either Marathon, Marathon EF, or Plains."[1]

Plaintiffs further allege: "With the numerous well sites and production facilities within a short distance from the plaintiffs' property, the oilfield operations began having a direct impact on the plaintiffs' home and acreage. In 2012, sinkholes began forming in the ground on the plaintiffs' property, which the plaintiffs would attempt to fill in with dirt. The sinkholes remain to this day and they continue to grow. Furthermore, when an oil well was fractured as either a new

---

[1] Plaintiff's Original Petition at p.3.

completion or a workover to stimulate production, the pier and beam foundation of the plaintiffs' home would shift, causing damage to the structure of the home."[2]

Finally, the Plaintiffs allege: "In 2012, the plaintiffs also began noticing that they were each beginning to experience health problems. The symptoms included daily headaches (often migraine), rashes, chest pain, bone pain, strange nerve sensations, high blood pressure, irregular heartbeats, nausea, irritation of the eyes, nose and throat, bronchitis, pain in the liver area, numbness in the extremities, and difficulty breathing. The child began to experience frequent nosebleeds. These problems began to manifest themselves in difficulty sleeping, depression, irritability, anxiety, frustration and anger. Even the family pet was put down after getting constant rashes and ultimately developing a large tumor."[3]  Plaintiffs allege that tests from the Texas Commission on Environmental Quality[4] have detected that "noxious chemicals have been found on the plaintiffs' property."[5]

In summary, Plaintiffs allege: "In [the Defendants'] pursuit of oil and gas, the defendants have continuously released strong odors and noxious chemicals into the environment, including the plaintiffs' property, causing injury and harm to the plaintiffs' property and to their persons."[6]

Plaintiffs bring causes of action under Texas state law for private nuisance[7], negligence and negligence per se[8].

---

[2] *Id.*
[3] *Id*. at p. 4.
[4] Plaintiffs also allege that a "TECQ [sic] report dated January 24, 2013 found violations for the emission levels of certain noxious chemicals at the Sugarhorn Central Facility owned by Marathon and/or Marathon EF. The chemicals found to be contaminating the area included high amounts of Benzene, C9+, Ethane, Ethyl Benzene, Heptanes, Hexanes, Hydrogen Sulfide, i-butane, i-pentane, Methane, nbutane, n-pentane, Octanes, Propane, Toluene, and Xylenes."  Plaintiffs, however, do not specify how close their home is to the Sugarhorn Central Facility.
[5] Plaintiff's Original Petition at p.4.
[6] *Id.*
[7] Defendants "interfered with or invaded the plaintiffs' interest by conduct that was negligent, intentional and unreasonable, or abnormal and out of place in its surroundings. The defendants' conduct resulted in a condition that substantially interfered with the plaintiffs' private use and enjoyment of the land, and the nuisance has caused injury to both the plaintiffs' land and to their persons."  Plaintiff's Original Petition at p. 5.

**Defendants' Notice of Removal**

On June 21, 2013, this case was timely removed by the Defendants to this court. In their notice of removal, Defendants allege that "Plaintiffs' state common law nuisance and negligence claims, to the extent they arise from complaints about air quality and emissions arising from Defendants' oilfield activities, are completely preempted by the federal Clean Air Act."[9],[10] Accordingly, Defendants argue that this Court has jurisdiction in this case pursuant to 28 U.S.C. § 1441(a). Defendants argue that this Court otherwise has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), "over Plaintiffs' remaining state common law nuisance and negligence claims that do not arise from federally preempted complaints about air quality and emissions."[11]

**Analysis**

Plaintiffs argue that removal was improper because no federal question was pled in the original petition and their state law claims are not preempted by the Clean Air Act. Further, Plaintiffs assert that emissions from the Marathon facility violate the Texas Clean Air Act and Plaintiffs' case "does not hinge on a determination that the emission levels of the Marathon facility were unreasonable."[12] "The plaintiffs' pleadings clearly outline causes of action which

---

[8] "1. By failing to conduct its oilfield operations in a manner which would not pollute the plaintiffs' property; 2. By emitting noxious chemicals into the environment surrounding the plaintiffs' property [sic] violation of state and federal law; 3. By failing to conduct its operations in a manner which would not damage the plaintiffs' home and acreage; 4. By allowing noxious odors and harmful chemical compounds onto the plaintiffs' property; 5. By failing to take corrective action after being notified of its excessive emissions to halt any further pollution by the harmful chemical compounds. The actions and omissions listed above, whether taken singularly or in the aggregate, are the proximate cause and/or producing cause of damages to the plaintiffs. The plaintiffs are a member of the group the state and federal laws are designed to protect." Plaintiff's Original Petition at p. 5.
[9] 42 U.S.C.A. §§ 7401, et seq.
[10] Defendants' notice of removal at ¶ 12. Defendants rely upon the following cases in support of their position: Am. Elec. Power Co., Inc. v. Connecticut, 131 S. Ct. 2527 (2011); State of North Carolina ex rel. Cooper v. Tenn. Valley Auth., 615 F.3d 291 (4th Cir. 2010); Comer v. Murphy Oil USA, Inc., 839 F. Supp. 2d 849 (S.D. Miss. 2012), aff'd, --- F.3d ---, 2013 WL 1975849 (5th Cir. May 14, 2013); Bell v. Cheswick Generating Station, 903 F. Supp. 2d 314 (W.D. Pa. 2012).
[11] Defendants' notice of removal at ¶ 16.
[12] Docket No. 11 at p. 7.

pertain to nuisance and negligence which will easily stand on their own without any federal statute being invoked or cited."[13]

In determining whether federal jurisdiction exists, this Court applies the well-pleaded complaint rule, which requires that we look to the face of the complaint rather than to defenses for the existence of a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Although generally a case may not be removed on the basis of a federal defense, *id*. at 393, an exception exists in cases of "complete preemption," where Congress so "completely pre-empt[s] a particular area that any civil complaint ... is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).

"Under the 'complete preemption' doctrine, 'what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all.' (internal citations omitted). 'The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

In determining the nature and reach of federal preemption, Congress's intent is the "ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). "Congress can indicate its preemptive intent either expressly through a statute's plain language, or impliedly through a statute's 'structure and purpose.'" *Elam v. Kansas City Southern Ry. Co*., 635 F.3d at 803-804.

Neither party has directed the Court to which provisions of the Clean Air Act support their position. The Court notes that pursuant to 42 U.S.C. § 7416, except as otherwise provided,

---

[13] *Id*. at p. 8.

nothing in the Act "shall preclude or deny the right of any State … to adopt or enforce any standard or limitation respecting emissions of air pollutants." Section 7401(a)(3) contemplates that air pollution prevention and elimination is the primary responsibility of States and local governments.

There are surprisingly few cases that have addressed whether the Clean Air Act preempts state law negligence or nuisance claims. The following courts that have addressed the issue have generally found no preemption. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F. 3d 112 (2d Cir. 2007) (allowing state tort claims on the grounds that the claims were aimed at controlling the behavior by the defendants rather than attempting to regulate the actual fuel products); *Her Majesty The Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 342-43 (6th Cir. 1989) ("it is clear that the district court erred in holding that the Clean Air Act preempted any action under MEPA regarding pollution standards"); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1281-82, 1284-85 (W.D. Tex. 1992) (negligence claim that defendant permitted toxic substances to escape from confines of facility and contaminate plaintiffs' properties not preempted by the Clean Air Act); *United States v. Atlantic-Richfield Co.*, 478 F. Supp. 1215, 1219-20 (D. Mont. 1979) (finding the Clean Air Act devoid of any intent to bar common law tort claims). *But See Bell v. Cheswick Generating Station*, 903 F.Supp.2d 314 (W.D. Pa. 2012) (Plaintiffs alleged that emissions from a coal-fired electrical generating facility caused damage to their properties. The Complaint also alleged that the defendant knew of or allowed the improper construction and operation of the facility and that the defendant operated the power plant without proper or best available technology or any proper air pollution control equipment, thereby allowing the generating station's emissions to invade and damage properties within a one-mile radius. The Court held that the Clean Air Act represented a comprehensive

statutory and regulatory scheme that establishes the standards with which the Cheswick Generating Station must abide and the plaintiffs' claims impermissibly encroached on and interfered with that regulatory scheme.).

Defendants appear to concede that not all of Plaintiffs' claims are preempted. For example, Defendants appear to concede that Plaintiffs' claims that hydrofracking or hydraulic fracturing is causing foundation damage to their home and sinkholes to develop on their property are not preempted. The Court agrees that these claims by Plaintiffs do not interfere with the Clean Air Act or impedes its goals. *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987) ("state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal").

The issue is whether the following claims are preempted by the Clean Air Act: (1) that Defendants negligently operate their oilfield operations in a manner that pollutes Plaintiffs' property; and (2) that Defendants' activities emit noxious chemicals onto Plaintiffs' property in violation of state and federal law.

Relying upon *Comer v. Murphy Oil USA, Inc*., 839 F. Supp. 2d 849 (S.D. Miss. 2012), Defendants argue that what constitutes a reasonable level of air emissions is regulated by the Clean Air Act and Plaintiffs' lawsuit challenges the reasonableness of air emissions from Defendant MOEF's facilities.[14]

In *Comer*, the "plaintiffs alleged that the oil company defendants released by-products that led to the development and increase of global warming, which produced the conditions that formed Hurricane Katrina, which damaged their property." 839 F. Supp. 2d at 852. The plaintiffs asserted claims of public and private nuisance, trespass, and negligence. The district stated that "although the plaintiffs do not request injunctive relief, they are asking this Court to

---

[14] Docket No. 16 at p. 1.

make … determinations regarding the reasonableness of the defendants' emissions. As explained previously, the state law causes of actions asserted by the plaintiffs hinge on a determination that the defendants' emissions are unreasonable." *Id*. at 865.  Accordingly, the district court found that the "plaintiffs' entire lawsuit is displaced by the Clean Air Act." *Id*.  The Fifth Circuit affirmed without discussing the preemption issue.  718 F.3d 460 (5th Cir. 2013).

In this case, Plaintiffs allege that Defendants are "emitting noxious chemicals into the environment surrounding the plaintiffs' property [sic] violation of state and federal law."  This allegation, standing alone, does not seek any determination regarding the reasonableness of the defendants' emissions and does not displace the Clean Air Act.

Plaintiffs' additional allegation, however, is more problematic.  Plaintiffs complain that Defendants are "allowing noxious odors and harmful chemical compounds onto the plaintiffs' property."  This appears to allege that the emission of any harmful chemical compound into the air by Defendants that land onto Plaintiffs' property constitutes negligence.  *See   Comer v. Murphy Oil USA, Inc.*, supra.

In *American Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527 (2011), Plaintiffs sued emitters of carbon dioxide claiming the "emissions created a 'substantial and unreasonable interference with public rights,' in violation of the federal common law of interstate nuisance, or, in the alternative, of state tort law."  *Id*. at 2534.  The plaintiffs "sought injunctive relief requiring each defendant 'to cap its carbon dioxide emissions and then reduce them by a specified percentage each year for at least a decade.'"  *Id*.  The Supreme Court held that Plaintiffs' federal common-law claims were "displaced by the federal legislation authorizing EPA to regulate carbon-dioxide emissions." *Id*. at 2537.  Because none of the parties briefed

7

preemption of the state-law nuisance claims, the Supreme Court did not address that issue and left it open for consideration on remand.

In *North Carolina, ex rel. Cooper v. Tennessee Valley Authority*, 615 F.3d 291 (4th Cir. 2010), based upon a public nuisance theory, the state of North Carolina was able to secure from the district court an injunction requiring the Tennessee Valley Authority to impose specific emissions caps and emissions control technologies. The Fourth Circuit reversed concluding that the Clean Air Act and the regulatory scheme established by the Environmental Protection Agency was so pervasive that preemption principles "caution at a minimum against according states a wholly different role and allowing state nuisance law to contradict joint federal-state rules so meticulously drafted." *Id*. at 303. In this case, rather than seeking a cap of some type, Plaintiffs' claim asserts that Defendants are negligent in allowing any harmful emissions to land onto their property.

Defendants do not provide the Court with any citation or argument as to how the Clean Air Act and any EPA regulations would be impacted by the allowance of Plaintiffs' state law claims. Further, although "citizen suits" are authorized under the Clean Air Act[15], the Act does not allow compensatory damages for such suits; thus, it is unclear how Plaintiffs could obtain any monetary relief from the alleged tortious activity. *Gutierrez v. Mobil Oil Corp*., 798 F. Supp. at 1284 ("To hold that the Clean Air Act preempts purely private state law causes of actions for damages would preclude relief for any person who can prove the elements of the common law claims. Such a result is clearly not intended under, and would not further the goals of, the Clean Air Act."). That stated, the prevalent recent cases appear to establish that the Clean

---

[15] *See* 42 U.S.C. § 7604 ("any person may commence a civil action on his own behalf … against any person … who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation").

Air Act preempts or displaces at least some claims that would prohibit emissions in contravention of that allowed by the Clean Air Act, the EPA and any implementing state regulations or laws.

## Conclusion

Accordingly, the Court concludes that Plaintiff's negligence claim that Defendants are "allowing noxious odors and harmful chemical compounds onto the plaintiffs' property" is preempted by the Clean Air Act inasmuch as that claim would prohibit emissions in contravention of that allowed by the Clean Air Act, the EPA and any implementing state regulations or laws. Accordingly, the Plaintiff has asserted a federal question for which removal to this Court was proper. Plaintiffs' motion to remand on the basis that no federal question was presented is denied. The remainder of Plaintiffs' claims, however, are not preempted or displaced by the Clean Air Act, and the Court possesses supplemental jurisdiction over those claims.

The Court notes that Defendants filed a proposed scheduling order. All parties are ordered to confer and submit, if possible, an agreed upon scheduling order. If the parties cannot agree, Plaintiffs should, within fourteen days, submit their proposed scheduling order and the Court thereafter will review each proposal and issue an order. In the event that Plaintiffs do not wish to proceed with any 42 U.S.C. § 7604 claim, leave is granted to file an amended complaint seeking dismissal of such claim and thereafter requesting a remand to state court pursuant to 28 U.S.C. § 1367(c).

SIGNED this 6th day of August, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE