UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL A. CERNY and MYRA L. CERNY, INDIVIDUALLY AND A/N/F OF C.A.C., A MINOR, <br><br> Plaintiffs, <br><br> VS. <br><br> MARATHON OIL CORPORATION, MARATHON OIL EF LLC, and PLAINS EXPLORATION & PRODUCING COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.  SA-13-CA-562-XR |

**ORDER**

On this date, the Court considered its jurisdiction over this case. Because Plaintiffs' claims are not completely preempted by the Clean Air Act, the Court concludes that it lacks jurisdiction and remands the case to state court.

**Background**

Plaintiffs filed this lawsuit in state court, asserting claims under Texas common law for private nuisance, negligence, and negligence per se arising from Defendants' oilfield operations around Plaintiffs' home. Plaintiffs allege that they have been harmed by Defendants' emission of noxious chemicals, noxious odors, and harmful chemical compounds.

Defendant Marathon Oil Corporation and Marathon Oil EF LLC removed the case to this Court on June 28, 2013, asserting that Plaintiffs' state-law claims are completely preempted by the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq*. Plaintiffs filed a motion to remand, arguing that federal question jurisdiction was lacking. This Court denied the motion to remand, finding that certain claims were completely preempted. Thereafter, Plaintiffs filed an amended complaint and a second motion to remand, which is opposed. Having reconsidered the applicable law and an

intervening decision from the Third Circuit, the Court now concludes that its original order denying remand was erroneous because there is no complete preemption. Accordingly, the Court vacates its prior order and remands this case to state court.

**Legal Standard**

Plaintiffs are the masters of their complaint, and may choose to allege only state-law claims even where federal remedies exist. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Under the well-pleaded complaint rule, a federal court lacks federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint. *Id*. That federal law might provide a defense to a state-law claim does not create federal question jurisdiction. *Id*. However, an exception to the well-pleaded complaint rule arises when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id*. When Congress has completely preempted an area, what otherwise appears as merely a state-law claim is converted to a claim arising under federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all. *Id.* "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Id.*

Complete preemption must be distinguished from "ordinary," "conflict," or "defensive" preemption, which does not create federal question jurisdiction but simply "declares the primacy of federal law, regardless of the forum or the claim." *Id.* State law may be conflict preempted when "it operates as an obstacle to the accomplishment of a federal objective, or when federal law authorizes expressly an activity prohibited by state law." *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 237 (5th Cir. 2012). "As a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Elam*, 635 F.3d at 803. "Indeed, complete preemption is a "narrow" exception to the well-pleaded complaint rule." *Id.* Even an obvious federal preemption defense does not, in most cases, create removal jurisdiction. *Beers v. N. Am. Van Lines, Inc.*, 836 F.2d 910, 913 n.3 (5th Cir. 1988).

Congress's intent is the "ultimate touchstone" for determining the nature and reach of federal preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Congress can indicate its

preemptive intent either expressly through a statute's plain language, or impliedly through a statute's "structure and purpose." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). In any event, we begin "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Elam*, 635 F.3d at 803. This assumption applies with particular force when Congress legislates in a field traditionally occupied by state law, and applies with less force when Congress legislates in a field with "a history of significant federal presence." *Id.*

### Analysis

Defendants argue that any claim asking the Court to determine what constitutes a reasonable level of air emissions from facilities that are already extensively regulated by the CAA is completely preempted by the CAA. The Fifth Circuit has stated that in order to establish complete preemption, the defendant must show that: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that the federal action be exclusive. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008); *see also Bellfort Enters. Inc. v. Petrotex Fuels, inc.*, 339 F. App'x 416, 418 (5th Cir. 2009) (stating that analysis of these factors is required by Fifth Circuit precedent).

The CAA provides for "citizen suits" for CAA violations, which authorize "any person" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitations under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a). "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order . . . and to apply any appropriate civil penalties." *Id.* The Act defines "emission standard or limitation under this chapter" as (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, (2) a control or prohibition respecting a motor vehicle fuel or fuel additive, (3) any condition or requirement of certain permits or CAA provisions, or (4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under

any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition or operations, which is in effect under this chapter . . . or under an applicable implementation plan. *Id.* § 7604(f). Thus, the CAA does provide a cause of action for violations of the CAA, though it is not analogous to state nuisance and negligence law. The CAA further provides for jurisdiction over such claims in the federal district courts (though that jurisdiction is not exclusive).

With regard to whether Congress intended the citizen suit to be exclusive, section 7604(e) is entitled "Nonrestriction of other rights," and provides:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

Thus, the plain language of § 7604 indicates that Congress did not intend the citizen suit provision to be the exclusive cause of action for claims arising out of emissions from stationary sources, as it expressly preserves the right of any person "under any statute or common law" to seek enforcement of "*any* emission standard or limitation or to seek *any other relief*." *Id.* (emphasis added); *see CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.").

The CAA also contains other savings clauses that indicate that Congress did not intend to regulate the field to such an extent that no room was left for any claim under state law. Section 7416 provides that "nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 7411 or section 7412 of this title, such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section." 42 U.S.C. § 7416. Section 7412, which defines and governs hazardous air pollutants, also states, "Nothing in this subsection shall preclude, deny or limit any right of a State or political

subdivision thereof to adopt or enforce any regulation, requirement, limitation or standard (including any procedural requirement) that is more stringent than a regulation, requirement, limitation or standard in effect under this subsection or that applies to a substance not subject to this subsection." 42 U.S.C. § 7412(r)(11). Thus, the language of the CAA indicates that Congress did not intend the CAA to provide the exclusive cause of action, such that Plaintiffs' state common-law claims for nuisance and negligence are not completely preempted. *See Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 553 (5th Cir. 2008).

Turning to the case law, very few cases have considered whether the CAA preempts state common-law claims of nuisance and negligence based on air emissions so as to provide for federal question jurisdiction. Neither the Fifth Circuit nor the Supreme Court have decided the issue. The Supreme Court has held that the CWA, which is similar to the CAA, does not preempt state-law nuisance claims against stationary sources under the source state's law.

In *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), the Supreme Court considered whether the Clean Water Act ("CWA") preempted a common-law nuisance suit filed in a Vermont court under Vermont law, when the source of the alleged injury was located in New York. *Id.* at 483. Like the CAA, the CWA "establishes a regulatory 'partnership' between the Federal Government and the source state." *Id.* at 490. Also similarly to the CAA, the CWA provides its own remedies, including civil and criminal fines for permit violations, and citizen suits that allow individuals to sue for injunction to enforce the statute. The Supreme Court stated that, "[i]n light of this pervasive regulation and the fact that the control of interstate pollution is primarily a matter of federal law, it is clear that the only state suits that remain available are those specifically preserved by the Act." *Id.* at 492. Considering the CWA's savings clause, which is similar to the CAA's savings clause, the Court said, "Although Congress intended to dominate the field of pollution regulation, the saving clause negates the inference that Congress 'left no room' for state causes of action." *Id.* Though the Court held that the savings clause did not preclude preemption of the law of an affected state, and that the CWA precludes a court from applying the law of an affected State against an out-of-state source, it also held that "nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the *source* State." *Id.* at 494, 497. "By its terms," the Court stated, "the CWA allows States such as New York to impose higher standards on their own point sources, and

in *Milwaukee II* we recognized that this authority may include the right to impose higher common-law as well as higher statutory restrictions." *Id.* at 497. The Court held that "application of the source State's law does not disturb the balance among federal, source-state, and affected-state interests" and "[b]ecause the Act specifically allows source States to impose stricter standards, the imposition of source-state law does not disrupt the regulatory partnership established by the permit system." *Id.* at 498.

In *America Electric Power v. Connecticut*, 131 S. Ct. 2527 (2011), the Supreme Court held that *federal* common-law nuisance claims were displaced by the regulatory scheme. The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute speaks directly to the question at issue. *Id.* at 2637. The Court held that the CAA and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants. *Id.* The Court declined to decide whether the state-law nuisance claims were preempted because the parties had not briefed the issue. It noted that "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal act," citing *Ouellette* with the parenthetical "holding that the Clean Water Act does not preclude aggrieved individuals from bringing a 'nuisance claim pursuant to the law of the *source* State." *Id.* at 2540 (emphasis in original). Thus, *AEP* indicates that the issue of preemption of state-law nuisance claims by the CAA is governed by *Ouellette*.

A few courts have held that the CAA does not completely preempt state-law claims so as to create federal question jurisdiction. In *Gutierrez v. Mobil Oil Corporation*, 798 F. Supp. 1280 (W.D. Tex. 1992), Judge Nowlin held that the CAA did not preempt state tort law negligence claims arising out of emissions from a stationary source. The plaintiffs sued in state court, and the defendants removed on the basis of complete preemption. Judge Nowlin held that complete preemption was lacking, given that the CAA expressly permits more stringent state regulation of stationary sources, and the preservation of state common law nuisance actions is implicit in the Supreme Court's decision *Ouellette*.

In *Gutierrez*, Judge Nowlin noted that both the CWA and the CAA have similar savings provisions that permit persons to commence state common-law actions founded in tort law for damages or any other relief. *Gutierrez*, 798 F. Supp. at 1283. Judge Nowlin concluded that

Congress intended to set minimum standards that states must meet but could not exceed, and expressly allowed the application of more stringent emission standards by the source state. *Id.* at 1283-84. Accordingly, he concluded, the only state laws that would be inconsistent with, and therefore preempted by, the CAA are those state laws that would purport to allow less stringent requirements or limitations on pollution from stationary sources within the state. He further noted that this intent was made clear in the 1990 amendments, which provide that air pollution prevention and air pollution control at its source is the primary responsibility of the States and local governments, *id.* at 1284 (citing 42 U.S.C. § 7410(a)), and in the legislative history, citing a Senate Report that states:

> Section 112 as amended by this legislation is intended to create a comprehensive Federal scheme for the regulation of toxic air pollutants. This regulatory regime provides a significant role for State and local governments which choose to participate in the Federal program. On other occasions where similar schemes have been enacted, Federal courts have concluded that the Federal law is preemptive of some State or local authorities even when such preemption was not explicitly stated or intended. To assure that such preemption of State or local law, whether statutory or common, does not occur, environmental legislation enacted by the Congress has consistently evidenced great care to preserve State and local authority and the consequent remedies available to the citizens injured by the release of harmful substances to the environment.

S. Rep. 101-228, 101st Cong., 1st Sess. 1989, 1990 U.S.C.C.A.N. 3385, 3582. Judge Nowlin noted that the CAA contains a citizen suit provision, but held that it "does not provide similar or comparable remedies to those sought by plaintiffs in common law actions for damages." *Gutierrez*, 798 F. Supp. at 1285. Although he was concerned with the manageability and efficiency of the dual system that Congress created, Judge Nowlin followed the language of the Act and the Supreme Court's precedent, and held that the CAA did not completely preempt the plaintiffs' common-law claims.

In 2007, the Second Circuit similarly held that the CAA does not completely preempt state-law causes of action sufficient to establish federal question jurisdiction. In *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 488 F.3d 112 (2d Cir. 2007), the plaintiffs (including states, cities, municipalities, private water providers, and other entities) sought relief for contamination or threatened contamination of groundwater from the defendants' use of the gasoline

additive methyl tertiary butyl ether ("MTBE"). The cases were filed in various state courts, and defendants removed the actions to federal court, asserting several grounds of subject matter jurisdiction, including substantial federal question and complete preemption. The district court denied the motion to remand, finding federal agent and bankruptcy jurisdiction. On appeal, the Second Circuit held that state-law remedies were available to address MTBE in groundwater, and that the CAA did not completely preempt the claims, nor was there a substantial federal question. The cases were remanded to state court.

The Sixth Circuit, in *Her Majesty the Queen v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989), has also held that the CAA did not completely preempt plaintiffs' claims under the Michigan Environmental Protection Act, and that the case was therefore improvidently removed from state court. The Sixth Circuit recognized that the CAA sets out a comprehensive regulatory scheme designed to prevent and control air pollution, but that states are free to adopt more stringent protections pursuant to the CAA's savings clause, 42 U.S.C. § 7416. The court held that the CAA "displaces state law only to the extent that state law is not as strict as emission limitations established in the federal statute." *Id.* at 342 (emphasis omitted). The Court also noted, "that Congress did not seek to preempt actions such as involved in this appeal is clearly indicated by the [Supreme] Court's holding in *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987)." *Id.* at 343. The plaintiffs' actions in state court would not alter or modify the validity of the federal permit previously issued, and would "simply be an instance where a state is enacting and enforcing more stringent pollution controls as authorized by the CAA." *Id.* at 344.

Defendants rely heavily on *Comer v. Murphy Oil USA*, 839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013). In that case, plaintiffs filed a class action lawsuit against a group of oil companies and insurance companies, alleging that the oil company defendants released by-products that led to the development and increase of global warming, which produced the conditions that formed Hurricane Katrina, which damaged their property. Plaintiffs filed their first lawsuit in 2005, asserting state-law tort claims including nuisance and negligence. The district court held that plaintiffs lacked standing because their injuries were not fairly traceable to the defendants' actions and that the claims were non-justiciable political questions. On appeal, a panel of the Fifth Circuit reversed in part with regard to plaintiffs' claims of public and private nuisance, trespass, and

negligence. *Comer v. Murphy Oil USA*, 585 F.3d 855, 880 (5th Cir. 2009). In that opinion, the panel cited a law review article that stated, "[t]he courts have long and consistently rejected assertions that the enactment of regulatory statutes like the Clean Air Act and Clean Water Act preempt states from public nuisance actions," and further stated that the Supreme Court in *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) "noted that the CWA preserved nuisance suits under state common law." *Comer*, 585 F.3d at 878-79. "Given the clear inapplicability of federal preemption in [the] case," the panel held, it would "not employ the political question doctrine in a way that would amount to a *de facto* preemption of state law." *Id.* at 879. The Fifth Circuit granted rehearing *en banc*, but then lost a quorum, which meant it was not authorized to transact judicial business, and the appeal was dismissed. However, the panel opinion was lawfully vacated and could not be reinstated.

Thereafter, plaintiffs filed a new lawsuit, asserting public and private nuisance (pursuant to both federal and state common law), trespass, and negligence claims against the defendants and seeking a declaratory judgment that their state-law tort claims arising from the defendants' emissions were not preempted by federal law. The district court found that the claims were barred by res judicata and collateral estoppel. It also held again that the plaintiffs lacked standing and that the claims presented non-justiciable political questions. It then briefly addressed the issue of preemption. Relying on the Supreme Court's decision in *American Electric Power v. Connecticut*, 131 S. Ct. 2527 (2011), the district court held "that the plaintiffs' entire lawsuit is displaced by the Clean Air Act." *Comer*, 839 F. Supp. 2d at 865. On appeal, the Fifth Circuit affirmed the district court's judgment, but expressly did so solely on the basis of res judicata. *Comer v. Murphy Oil USA*, 718 F.3d 460 (5th Cir. 2013).

Relying on *Comer*, Defendants assert that the Fifth Circuit has held that the CAA completely preempts state common-law claims. *See* docket no. 16 at 3. Defendants further assert that *Comer* "is controlling precedent on the issue of whether state common law claims challenging the reasonableness of regulated air emissions are preempted by the Act." Docket no. 30 at 1. These contentions are erroneous. As an initial matter, the Fifth Circuit's second *Comer* decision does not consider the preemption issue. The Court did not discuss the preemption issue at all, and in fact only used the word "preempted" one time in the opinion – to note that the district court had held that the claims were preempted by the CAA. It expressly affirmed solely on the basis of res judicata, and

it in no way affirmed or endorsed the district court's preemption analysis. Thus, the district court's analysis on the preemption issue carries only the weight of a district court opinion – persuasive, but not controlling.

In addition, *Comer* was initially filed in federal district court. The issue of complete preemption for purposes of removal or federal jurisdiction was not raised. The *Comer* district court did not conduct a complete preemption analysis. Further, the *Comer* district court relied on *AEP*'s displacement analysis to hold that state common-law claims were "displaced." However, "[t]he appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law pre-empts state law." *City of Milwaukee v. Illinois*, 451 U.S. 304, 316 (1981); *see also Am. Elec. Power v. Connecticut*, 131 S. Ct. 2527, 2537 (2011) ("Legislative displacement of federal common law does not require the "same sort of evidence of a clear and manifest [congressional] purpose" demanded for preemption of state law."); Scott Gallisdorfer, *Clean Air Act Preemption of State Common Law: Greenhouse Gas Nuisance Claims after AEP v. Connecticut*, 99 VA. L. REV. 131, 154-55 (March 2013) (arguing that the *Comer* district court mistakenly conflated displacement and preemption and unjustifiably enlarged the Supreme Court's holding in *AEP*). Accordingly, because the *Comer* case did not involve a complete preemption analysis for purposes of jurisdiction, and because the district court conducted a displacement analysis rather than a preemption analysis, the Court does not find its decision to be binding or persuasive precedent on the issue of whether plaintiffs' state-law nuisance and negligence claims are completely preempted.[1]

What is controlling precedent, however, is *Ouellette*. As noted, there the Supreme Court held that the analogous CWA did not preempt source-state nuisance actions. Defendants contend that the Supreme Court's decision in *AEP v. Connecticut* has changed the law. However, *AEP* held only that *federal* common law was displaced by the CAA. As noted, displacement of federal common law is a different issue and does not direct a conclusion regarding complete preemption of state common

---

[1] Similarly, *North Carolina v. Tennessee Valley Authority*, 615 F.3d 291 (4th Cir. 2010) was originally filed in federal court and the court did not consider the jurisdictional nature of the preemption. The Fourth Circuit expressly did not "hold flatly that Congress has entirely preempted the field of emissions regulation." *Id.* at 302.

law. The *AEP* court expressly left open the question of whether a state nuisance claim was preempted for consideration on remand,[2] citing *Ouellette*. *American Electric Power*, 131 S. Ct. at 2540. The Court's citation to *Ouellette* indicates that the *Ouellette* decision should guide the determination of whether the CAA preempts state common-law nuisance claims, and *Ouellette* indicates that source state nuisance claims are not preempted.

After this Court issued its first order denying remand, the Third Circuit issued a decision in *Bell v. Cheswick Generating Station*, __ F.3d ___, 2013 WL 4418637 (3d Cir. Aug. 20, 2013). The Third Circuit reversed the district court's decision finding that the CAA preempted the plaintiffs' state law tort claims.[3] The Third Circuit held that the plain language of the savings clauses in the CAA, as well as the Supreme Court's controlling *Ouellette* decision, requiring a finding that the state-law tort claims were not preempted. The court noted that the Supreme Court had already addressed and rejected the defendants' arguments, holding that (1) because the Act specifically allows source States to impose stricter standards, the imposition of source-state law does not disrupt the regulatory partnership established by the permit system; (2) a source would be required to look to only a single additional authority, whose rules should be relatively predictable; and (3) states can be expected to take into account their own nuisance laws in setting permit requirements. *Ouellette*, 479 U.S. at 498-99. The Third Circuit held that the Supreme Court recognized that the requirements placed on sources of pollution through the "cooperative federalism" structure of the CWA served as a regulatory floor, not a ceiling, and expressly held that states are free to impose higher standards on their own sources of pollution, and that state tort law is a permissible way of doing so.

Having reconsidered the existing authority and the Third Circuit's recent opinion in *Bell*, the Court now concludes that Plaintiffs' claims are not completely preempted and that federal question jurisdiction is lacking. The Court notes that it is holding only that Plaintiffs' claims are not completely preempted for purposes of federal question jurisdiction. Given that holding, the Court

---

[2] On remand, the plaintiffs voluntarily dismissed and the issue was never reached.

[3] The Court notes that jurisdiction in *Bell* was not premised upon complete preemption. Plaintiffs filed their lawsuit in state court, and the defendants removed on the basis of diversity. Thereafter, the defendants moved to dismiss on the basis of a preemption defense. *Bell*, __ F.3d at __, 2013 WL at *4.

may not decide in the first instance whether the CAA provides a federal preemption defense to the state-law claims, and the Court's holding regarding complete preemption has no preclusive effect on the state court's consideration of the merits of a substantive preemption defense. *See Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 554 & n.7 (5th Cir. 2008).

## Conclusion

The Court's order dated August 6, 2013 denying Plaintiffs' motion to remand (docket no. 23) is VACATED. Plaintiffs' motion to remand (docket no. 11) is granted. This case is remanded pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Plaintiffs' request for attorneys' fees and costs related to the removal of this case is denied.

Plaintiffs' Amended Complaint (docket no. 24), filed in response to this Court's vacated order, is also VACATED. Docket no. 25 and docket no. 26 are DISMISSED AS MOOT. The Clerk is directed to remand this case to state court and to close this case.

It is so ORDERED.

SIGNED this 7th day of October, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE